IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **DAVID PULPHUS**, | ) | |
| 4015 North 23rd Street, | ) | |
| St. Louis, MO 63107; | ) | |
| | ) | |
| and | ) | |
| | ) | |
| **REPRESENTATIVE WILLIAM LACY** | ) | |
| **CLAY**, | ) | |
| United States House of Representatives, | ) | |
| Washington, DC 20515; | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | Civil Action No. _____ |
| v. | ) | |
| | ) | |
| **STEPHEN T. AYERS**, in his official capacity | ) | |
| as Architect of the Capitol, | ) | |
| c/o General Counsel | ) | |
| 2nd & D Streets SW, Room H2-265A | ) | |
| Washington, DC 20515; | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

### Introduction

Bowing to overt political pressure, Stephen T. Ayers, in his official capacity as the

Architect of the Capitol ("Defendant" or the "AOC"), has violated the First Amendment rights of

Mr. David Pulphus, a young artist from Missouri who won the right to have his winning entry

("Untitled #1" or the "Painting") from the Congressional Art Competition ("Competition")

displayed in the U.S. Capitol Building's Cannon Tunnel ("the Cannon Tunnel").  Though the

Painting hung in the Capitol without controversy for nearly seven months, Defendant has now

taken the unprecedented step of retroactively disqualifying the Painting from the Competition

and removing it from display in the heavily traveled Cannon Tunnel.  Despite Defendant's

1

earlier determination that the Painting complied with all the requirements of the Competition, including its "suitability guidelines," the AOC now maintains that the Painting is not compliant with these guidelines.  The decision to retroactively disqualify the Painting followed a well-publicized effort to disparage the Painting that was led by a band of Congressmen and included multiple unauthorized attempts to remove it from display in the Cannon Tunnel.

The AOC's decision to remove the Painting—based solely on these objections to its content and viewpoint—constitutes a "heckler's veto" and a clear violation of Mr. Pulphus's constitutional rights.  Defendant has likewise violated the First Amendment rights of Representative William Lacy Clay, who sponsored the Painting in the Competition, agreed to be "responsible for [the] content" of the Painting and—as a result of Defendant's unconstitutional censorship—has been deprived of the opportunity to display the first place winner from his Congressional district for the remainder of the 2016 Competition period.

Mr. Pulphus and Representative Clay (collectively, "Plaintiffs") seek a declaration that their rights were violated and an injunction ordering the AOC to reinstate the Painting in the Competition and to rehang the Painting in the Cannon Tunnel alongside the other winning entries for the remainder of the 2016 exhibition period.

### Jurisdiction

1.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question).

2.     Plaintiffs also seek relief authorized by the Declaratory Judgment Act, 28 U.S.C. §§ 2201 et seq.

3.     Venue is proper in this Court under 28 U.S.C. § 1391.

## Parties

4.      Plaintiff David Pulphus is a 2016 graduate of Cardinal Ritter College Preparatory High School in St. Louis, Missouri.  He is presently 19 years old.  At the time he submitted the Painting for consideration in the Competition, he was a 12th grade student.

5.      Plaintiff William Lacy Clay is the U.S. Representative for the First District of Missouri in the U.S. House of Representatives (the "House").  He is suing in his official capacity.

6.      Defendant Stephen T. Ayers is the AOC.  He is sued in his official capacity.  The AOC, whose appointment, powers, and duties are set forth by law, *see* 2 U.S.C. §§ 1801 *et seq*., is responsible for, *inter alia*, the maintenance, operation, development, and preservation of the buildings and land throughout the U.S. Capitol Complex.  The AOC is supervised by the House Office Building Commission ("HOBC"), a commission that, pursuant to 2 U.S.C. § 2001, is comprised of the Speaker of the House of Representatives ("Speaker") and two Representatives in Congress to be appointed by the Speaker.  As explained further below, in addition to the AOC's statutory responsibilities, the AOC also plays a role in organizing and administering the Competition.

## Factual Allegations

### A.      The History and Purpose of the Congressional Art Competition

7.      According to a February 2016 Congressional Research Service report ("Report"), U.S. Representative Frederick Richmond proposed the idea of a nationwide student art contest to House Speaker Thomas O'Neill, Jr. in July of 1981.  The purpose of the Competition, as described by the Report, was to "encourag[e] nationwide artistic creativity by high-school students through art exhibits in the tunnels connecting the Capitol to the House office buildings."

Speaker O'Neill, in his role as chair of the HOBC, "indicated no objection to an exhibit as long as it was conducted at no expense to the government." The Speaker further required that the Congressional Arts Caucus work with the AOC and the HOBC on the details "and to ensure that a jury of qualified people approves the final selection of student art for the exhibit."

8.     In February of 1982, Speaker O'Neill announced the first Competition. Speaking about the Competition, Representative Richmond said that "Members of Congress would conduct the contest among high school students in their districts. The winning art will line a corridor in the Capitol."

9.     As detailed in the Report, the Competition is "based in congressional districts" and "provides the opportunity for Members of Congress to encourage and recognize the artistic talents of their young constituents."

10.     Participation in the contest by Members of Congress is voluntary. Participating House Members solicit entries from students in their congressional districts and thereafter set forth a procedure by which winning artwork is to be selected. There is no required procedure for the selection of winning entries into the Competition. Rather, each House Member may establish his or her own method of judging the submissions and may select any entry as long it conforms to the general specifications set forth in the Competition guidelines.

11.     Winning artwork from each participating district is on display in the Cannon Tunnel for approximately eleven months each year.

12.     The Competition has no budget and no staff. Many administrative duties related to the Competition are handled by the offices of two Members of Congress who serve as bipartisan co-chairs of the Competition.

13.     Since the Competition's inception, the Office of the AOC has assisted with moving, hanging, labeling, arranging, and returning the artwork.  The Office of the AOC also arranges the winning artwork alphabetically by state, maintains a tracking system, hangs the winning artwork in the Cannon Tunnel, and prepares and attaches the descriptive labels accompanying the artwork.

14.     Since 2009, the Congressional Institute, Inc., a non-profit organization "dedicated to helping Members of Congress better serve their constituents and helping their constituents better understand the operations of the national legislature," has assisted and advised Member offices on how to run the Competition in their districts.  The Congressional Institute also handles many logistical aspects of the Competition, including answering questions from participants, collecting winner information, mailing notifications, and providing food for the annual reception honoring the winners.

15.     The annual reception is held in Washington, DC in June and honors all Competition winners.  Historically, the reception, transportation, t-shirts, photography, event website, name tags, and program printing have been privately sponsored.

16.     No legislation has ever been introduced to authorize, sanction, or otherwise make permanent the Competition.

17.     Since its inception in 1982, over 650,000 students have participated in the Competition.

**B.     The 2016 Competition**

18.     The *Dear Colleague* letter announcing the 2016 Competition to Members of Congress described it as "a nationwide annual art competition that allows high school students

from all fifty states, the District of Columbia and U.S. Territories to showcase their artistic ability."

19.    Participating Members of Congress made available the 2016 Competition forms for teachers and students.

20.    There are two sets of applicable guidelines: one for Congressional offices and one for students and teachers.

21.    Both sets of guidelines detail important dates for participating in the Competition and the requirements for size, framing, medium, and originality.  In addition, the guidelines include a section on "suitability" of the artwork.

22.    Other than the guidelines, the Competition materials contain no restrictions on content, and state no desired theme, message, or medium for the art or for the Competition as a whole.

23.    The guidelines stated that "[t]he final decision regarding the suitability of all artwork for the 2016 Congressional Art Competition exhibition in the Capitol will be made by a panel of qualified persons chaired by the Architect of the Capitol."  Competition entrants were required to acknowledge a nearly identical statement on the 2016 Congressional Art Competition Student Information & Release Form ("Form").

24.    On the same Form, the sponsoring Member was required to avow that he or she had "viewed the above-signed student's artwork and approve[d] of its content," and that he or she understood that by signing the Form, he or she was "supporting this artwork" and was "responsible for its content."

25.    The guidelines for Congressional offices also state: "Each Member of Congress may designate only one first place winner, whose artwork will hang in the Cannon Tunnel.

Artwork will not be rotated in and out of the exhibit, so multiple first place winners should not be named."

26.     In addition to its exhibition for eleven months in the Cannon Tunnel, winning artwork may be publicly displayed by the sponsoring Member and the House for up to two years from the date of entry.

27.     The winning artwork is also displayed on the websites of both the House and the Congressional Institute.

28.     Mr. Pulphus entered "Untitled #1" into the 2016 Competition sponsored by Representative Clay.

29.     "Untitled #1," a medium-sized painting, depicts a protest.  In the foreground of the Painting, two police officers and a young man face each other in a standoff.  The officers have guns drawn and pointed at the young man.  Both the young man and the officers have animalistic features: the officers appear to have the heads of warthogs, while the young man has the head of a wolf and a long tail.  In the background, protesters look on, and another officer arrests another young man; none of these figures have animalistic features.  A young black man, crucified on the scales of justice, hovers just above the fray.

30.     On his entry form, Mr. Pulphus briefly described the Painting as "Deep expressions on difficult times in our community."

31.     In April of 2016, Representative Clay convened a panel of jurors to select a piece to represent his Congressional district in the Cannon Tunnel.  The panel was composed of three local artists: Robin Hirsch-Steinhoff, the Artistic Director of Art Saint Louis; Tom Lang, the Chair of the Department of Art, Design, and Art History at Webster University; and Darnell

Malone, an artist and art teacher.  Representative Clay did not participate in the selection of the winning painting.

32.     On May 6, 2016, Representative Clay announced Mr. Pulphus as the unanimously selected first place winner of the Competition for his district.  Representative Clay's press release described "Untitled #1" as portraying "a colorful landscape of symbolic characters representing social injustice, the tragic events in Ferguson, Missouri and the lingering elements of inequality in modern American society."

33.     Due to the physical fragility of "Untitled #1," Jasmina Hadzic, Representative Clay's Education Coordinator, flew with the Painting from St. Louis, Missouri to Washington, DC on May 19, 2016.  Representative Clay paid for Ms. Hadzic's travel using Member Representational Account Funds.

34.     On May 26, 2016, Dr. Thomas Ringenburg, a Congressional Political Science Fellow then working in Representative Clay's office, delivered the Painting to a reserved room in the Cannon House Office Building, where artwork for the Competition was being reviewed prior to official acceptance into the Competition.  At that time, the AOC, acting through his staff and in conjunction with Congressional Institute personnel, inspected "Untitled #1" to determine its compliance with the guidelines, including the following:

> Artwork must adhere to the policy of the House Office Building Commission.  In accordance with this policy, exhibits depicting subjects of contemporary political controversy or a sensationalistic or gruesome nature are not allowed.  It is necessary that all artwork be reviewed by the panel chaired by the Architect of the Capitol and any portion not in consonance with the Commission's policy will be omitted from the exhibit.

35.     During this review, a question was raised regarding the size of the Painting, which necessitated further review.  Upon further review, it was determined that the Painting met the

size requirements set forth in the guidelines.  No member of the reviewing panel raised any concern or objection to the content of the Painting or suggested that the Painting did not comply with the suitability guidelines in any respect.

36.     Following the review, the AOC, acting through his staff and in conjunction with Congressional Institute personnel, officially accepted the Painting for display in the Cannon Tunnel, and checked the box for the First Congressional District of Missouri off the list.

37.     The AOC provided Tunnel wall space for the Painting and hung the Painting.

38.     On information and belief, and consistent with past practice, AOC staff and/or Congressional Institute personnel arranged the Painting in alphabetical order with the other more than 400 submissions, prepared and hung a descriptive label below the Painting, and entered the Painting in the AOC tracking system.

39.     Following Mr. Pulphus's win, the Congressional Institute extended to him and his family an invitation to a reception in June of 2016 for Competition winners.  Mr. Pulphus and his mother attended the reception at the Capitol, during which "Untitled #1" was displayed and honored along with the artwork of the other winners.  Mr. Pulphus was photographed with his mother and Representative Clay in front of the display of "Untitled #1."  On information and belief, approximately 450 people, including winners, guests, Members of Congress, and Congressional staffers attended the June reception.

40.     Mr. Pulphus and his family paid for their lodging, transportation, and incidentals while in Washington, DC for the reception.

41.     From May 26, 2016 until January 17, 2017, "Untitled #1" hung in the Cannon Tunnel, as placed by the AOC, in a space specifically designated for Representative Clay's district.  The descriptive label hung beneath the Painting read:

David Pulphus
*Untitled #1*
Acrylic
Hon. William Lacy Clay

42.     On information and belief, the AOC's staff and/or Congressional Institute personnel prepared and hung the descriptive label.

43.     Over 400 winning pieces of artwork were mounted alongside "Untitled #1" in the Cannon Tunnel as part of the 2016 Competition.  A number of the artworks on display depict arguably contemporary and politically themed subjects, including (1) a depiction of two white police officers of another era harassing an African-American playing checkers; (2) a portrait of Senator Bernie Sanders with doves flying just above his head; (3) a painting titled "POTUS" showing President Obama in a cubist style; (4) a photograph of a man who appears to be homeless wearing a cardboard sign around his neck with the word "Veteran" printed on it; (5) a painting titled "Welcome Home" depicting a male solider in camouflage clutching a young girl holding an American flag who clings to his neck; (6) a drawing titled "Homecoming" depicting an emotional man wearing U.S. Army fatigues clutching a baby; (7) a painting depicting the American flag with a pair of Converse sneakers appearing to lay on top of the flag; (8) a painting titled "Huddled Masses Yearning to Be Free" depicting a person who is bleeding and has a black eye; and (9) a painting titled "Beauty in the Struggle" depicting a young African-American child posed in front of a Confederate flag who is holding a yellow rose in one hand and has a broken chain around his other wrist.

44.     During the period in which "Untitled #1" hung without controversy in the Cannon Tunnel, the Painting was also displayed on the Congressional Institute's website along with the other winning artworks.

**C.      The Repeated Unauthorized Removal of "Untitled #1"**

45.      On December 29, 2016, a website called the Independent Journal Review posted an article that criticized "Untitled #1" as "depicting police officers as pigs with guns terrorizing a black neighborhood," and noted that the Painting was "displayed proudly inside our nation's Capitol."  The article quoted Representative Dave Reichert and a senior Republican congressional aide, both of whom expressed disapproval of the Painting.  Representative Reichert was quoted saying that it was "disheartening to see this depiction of law enforcement hanging in the hallway of our nation's Capitol."

46.      The following day, Eric Bollings, the host of Fox News Channel's "The Five," urged viewers to call Congress to have "Untitled #1" removed.  "Take [the Painting] down," Bollings said.  "I'm saying this to 3 million people watching right now.  Call your congressman or call his office and say, 'get that picture down.'"

47.      Less than a week later, the presidents of police unions in New York, Los Angeles, San Francisco, San Jose, and Oakland sent a letter to Speaker of the House Paul Ryan, imploring the Speaker to "exercise the extraordinary power [he] possess[es] . . . to immediately remove the reprehensible and repugnant 'art' on display in our nation's Capitol."

48.      On information and belief, after receiving this letter, Speaker Ryan held a private meeting with House Republicans that included Representative Reichert and Representative Duncan Hunter.

49.      On January 6, 2017, Representative Hunter unilaterally removed the Painting and took it to the office of Representative Clay.  Representative Hunter's removal of the Painting was unauthorized.  He was not a member of the HOBC, and did not act with the permission of the HOBC, the AOC, or any other entity.

50.     On the same day, Representative Reichert delivered to Representative Clay a handwritten note requesting that Mr. Pulphus submit "a new piece that adheres to the policy set by the House Building Commission [sic]."  Representative Reichert attached the suitability guidelines to the note.  On information and belief, he did not issue this request as a member of, or with the approval of, the HOBC.  Moreover, Representative Reichert's request conflicted with the guidelines for Congressional offices, which stated that artwork would not be rotated in and out of the exhibit.

51.     On January 9, 2017, members of Representative Clay's staff attempted to file a complaint with the Capitol Police against Representative Hunter for the unauthorized removal of the Painting.  Capitol Police Inspector Thomas Lloyd informed the staff that he declined to take Representative Clay's complaint on advice from Capitol Police Chief Matthew Verdosa.  Chief Verdosa refused to respond to requests from Representative Clay's Chief of Staff for explanation of this decision.

52.     In a call to Representative Clay's office on January 9, 2017, the AOC confirmed that Representative Hunter had removed "Untitled #1" without his authorization.  The AOC's Communications Director, Mamie Bittner, also assured Representative Clay's staff that the AOC would have wall materials available to assist the Representative in rehanging the Painting.  During these conversations, neither the AOC nor Bittner expressed any issue with the subject of "Untitled #1" or its conformance with the suitability guidelines.

53.     In the early morning of January 10, 2017, Representative Clay, fellow members of the Congressional Black Caucus, and other lawmakers rehung the Painting.

54.     The Painting was subsequently removed again, this time by Representative Doug Lamborn, and returned to Representative Clay's office.

55.     Representative Clay again rehung the Painting.

56.     The same afternoon, the Painting was again removed by Representatives Brian Babin and Dana Rohrabacher and returned to Representative Clay's office.

57.     Representative Clay once more rehung the Painting.

**D.      The AOC's Re-Review and Retroactive Disqualification of "Untitled #1"**

58.     On January 11, 2017, based on his contention that the artwork violated the suitability guidelines, Representative Reichert formalized these efforts to get the Painting removed by requesting an "official" re-review of "Untitled #1" by the AOC.

59.     The following day, Representative Clay and Representative Jamie Raskin sent a letter to Speaker Ryan challenging the prior removals of the Painting as an "act of vigilante censorship" and a violation of the First Amendment.  Outside organizations, including the College Art Association and the National Coalition Against Censorship, also publicly advocated against further efforts to remove "Untitled #1" from display.

60.     Despite these requests, the next day Speaker Ryan stated during a radio interview that the Painting was "disgusting and . . . not befitting the Capitol," and disputed that the removals of the Painting implicated the First Amendment.

61.     On the same day, a paper "Blue Lives Matter" flag was taped above "Untitled #1."  On information and belief, this addition to the Cannon Tunnel exhibition was unauthorized.

62.     On January 13, 2017, Representative Reichert's office reported that the AOC had re-reviewed "Untitled #1" and rescinded its initial determination that the Painting was in full compliance with the Competition guidelines.

63.     On January 14, 2017, the Congressional Institute removed the Painting from its website.

64.     On January 17, 2017, the AOC authorized the removal of "Untitled #1" from the Cannon Tunnel.  The AOC returned the Painting to Representative Clay's office.

65.     In a January 17, 2017 letter to Representative Clay addressing this fourth removal of "Untitled #1," the AOC stated that, based on consultation with "industry experts" and his own review, he had "determined that the artwork in question does not comply with the HOBC artwork prohibition [of artwork depicting subjects of contemporary political controversy or a sensationalistic or gruesome nature]."  The AOC did not further detail how "Untitled #1" depicted such subjects or detail any input that may have been received by "industry experts." Nor did he acknowledge that he had previously determined that "Untitled #1" complied with the suitability guidelines and all other requirements when the Painting was accepted and hung on May 26, 2016.

66.     Given that the AOC reviewed and approved the Painting in May of 2016 and reversed his initial decision only after considerable political pressure, it is clear that Untitled #1 has been removed on account of its content and its perceived viewpoint.

67.     Following the AOC's removal and retroactive disqualification of "Untitled #1," Representative Clay sought reversal of the AOC's decision from the HOBC.  On February 3, 2017, the HOBC voted to uphold the decision to remove and retroactively disqualify "Untitled #1."

68.     Display of the remaining winning artwork in the Cannon Tunnel is set to conclude in May of 2017.  As a result, there are less than four months remaining during which "Untitled #1" is eligible for display in the Cannon Tunnel as a Competition winner.

69.     On information and belief, in the thirty-five years since the Competition began, no artwork other than "Untitled #1" has ever been disqualified from the Competition or removed from the Cannon Tunnel after it has been hung.

70.     At an oversight hearing held by the Committee on House Administration on February 6, 2017, the AOC testified that it was his understanding that, prior to the removal of "Untitled #1," no piece of art had ever been removed from the Capitol campus on political grounds.

71.     By permitting the objections of certain Republican lawmakers to the content and perceived viewpoint of the Painting to silence Plaintiffs' constitutionally protected speech, the AOC's retroactive disqualification of "Untitled #1" amounts to a "heckler's veto."

72.     As an aspiring young artist, the display of "Untitled #1" in the Cannon Tunnel and on the Congressional Institute website enabled Mr. Pulphus to share his art with a significantly wider audience than that to which he had previously had access.  Winning the Competition, receiving the subsequent honor at the reception, and having "Untiled #1" displayed for nearly seven months were very meaningful to Mr. Pulphus, who had included the honor on his college application.  In addition to limiting the public exposure of his art and diminishing the benefit to him of winning the Competition, the removal of the Painting has caused significant distress to Mr. Pulphus.

73.     Mr. Pulphus has also suffered harm to his reputation as an aspiring young artist. Included in this reputational harm is that Mr. Pulphus may no longer include winning the Competition among the honors he has received by, for example, listing such an honor on his résumé.

74.    "Untitled #1" has been demeaned in the public sphere by powerful and well-known members of Congress, such as Speaker Ryan and other members of the House.  The retroactive disqualification of "Untitled #1" by the AOC elevates the public criticism of Mr. Pulphus's viewpoint, heightens the embarrassment of being excluded from a Competition of which he was previously declared a winner, and has caused additional distress to Mr. Pulphus.

75.    Similarly, though Representative Clay's district has been represented in the Competition for the past sixteen years, for the first time in the history of his participation in the Competition there is no art on display from his district in the Cannon Tunnel.  Representative Clay's ability to perform his representational duties has thus been impinged.  Unlike his colleagues, who are able to promote the work of their constituents through participation in the Competition, Representative Clay may no longer sponsor and promote the artwork of his district in the same manner as other Members of Congress.  Representative Clay is experiencing ongoing stress and anger over the retroactive and viewpoint-based exclusion of his district from the Competition, despite the AOC having previously determined that "Untitled #1" met all applicable rules and regulations.  In addition, Representative Clay's time and efforts and those of his staff have been diverted from important legislative responsibilities as a result of the AOC's lawless action.

76.    Mr. Pulphus and Representative Clay are thus suffering, and will continue to suffer, irreparable injury by reason of Defendant's restriction of their constitutionally protected speech.

77.    Mr. Pulphus and Representative Clay have also suffered damages in the form of costs they both expended to participate in the Cannon Tunnel exhibit from which they have been unconstitutionally excluded.

78.     Unless restrained, Defendant will continue to unconstitutionally obstruct the display of "Untitled #1" in the Cannon Tunnel and on the House's and Congressional Institute's websites.

## Causes of Action

### *Violation of the First Amendment of the U.S. Constitution*

79.     The allegations contained in ¶¶ 1 through 78 set forth above are incorporated by reference as though set forth fully herein.

80.     Defendant's removal of "Untitled #1" from the Cannon Tunnel violated Plaintiffs' rights arising under the First Amendment of the U.S. Constitution by discriminating against speech that was otherwise within the Competition's limitations, based solely on the Painting's viewpoint.

81.     Defendant's removal of "Untitled #1" from the Cannon Tunnel violated the First Amendment rights of both Plaintiffs and the viewing public by impermissibly imposing a content-based restriction on speech that was not reasonable in light of the purpose served by the Competition and was selectively applied to Plaintiffs.

82.     The suitability guidelines are unconstitutionally vague and overbroad in violation of the First Amendment.

83.     Mr. Pulphus and Representative Clay are entitled to declaratory and injunctive relief to remedy these violations of their constitutional rights.

### *Declaratory Relief*

84.     The allegations contained in ¶¶ 1 through 83 set forth above are incorporated by reference as though set forth fully herein.

85.     Defendant's violation of Plaintiffs' First Amendment constitutional rights has created an actual controversy within this jurisdiction.

86.     This Court should issue a declaration that (a) Defendant violated Plaintiffs' First Amendment constitutional rights, and (b) Plaintiffs are entitled to immediate, injunctive relief.

### *Injunctive Relief*

87.     The allegations contained in ¶¶ 1 through 86 set forth above are incorporated by reference as though set forth fully herein.

88.     As a direct and proximate result of Defendant's violation of Plaintiffs' First Amendment rights, Plaintiffs have been injured, irreparably, although Plaintiffs have no adequate remedy at law.

89.     Injunctive relief is appropriate in this action because (a) Plaintiffs will likely prevail on their claims or causes of action; (b) Plaintiffs will likely suffer irreparable harm without immediate, injunctive relief; (c) the balance of equities presented by this controversy are in favor of Plaintiffs; and (d) injunctive relief is in the public interest.

### Prayer For Relief

**WHEREFORE**, Plaintiffs request that this Court:

1.     Declare Defendant's retroactive disqualification of "Untitled #1" from the Competition and its removal from the Cannon Tunnel unconstitutional;

2.     Preliminarily and permanently enjoin Defendant from excluding "Untitled #1" from display in the 2016 Competition exhibition in Cannon Tunnel and on the relevant websites where the other winning selections are displayed;

3.     Award Plaintiffs their costs, including reasonable attorneys' fees, pursuant to 28 U.S.C. § 2412; and

4.      Grant any additional relief as may be just and proper.

Dated:  February 21, 2017              Respectfully submitted,

                                       */s/ Kymberly K. Evanson*
Leah J. Tulin (#988003)                Kymberly K. Evanson
Tassity S. Johnson                     Athan P. Papailiou
Satenik Harutyunyan                    Pacifica Law Group
Jenner & Block LLP                     1191 Second Avenue
1099 New York Avenue, NW               Suite 2000
Suite 900                              Seattle, WA 98101
Washington, DC 20001-4412              Phone:  (206) 245-1700
Phone:  (202) 639-6000                 kymberly.evanson@pacificalawgroup.com
ltulin@jenner.com

                                       James M. Williams*
                                       Chehardy Sherman Williams
                                       One Galleria Blvd.
                                       Suite 1100
                                       Metairie, LA 70001
                                       Phone:  (504) 962-4287
                                       jmw@chehardy.com

                                       *Pro hac vice* admission to be sought


                                       *Attorneys for Plaintiffs*